UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CARL M. FARLEY                                                    CIVIL ACTION

VERSUS                                                            NUMBER: 14-2550

CALLAIS & SONS LLC                                                SECTION: "A"(5)

### ORDER AND REASONS

Before the Court is a Motion to Compel Production of Facebook Records filed by Defendant, Callais & Sons, LLC ("Callais"). (Rec. doc. 9). That motion seeks an order compelling personal-injury plaintiff, Carl M. Farley ("Farley"), to produce:

> all of his Facebook activity and records subsequent to the alleged incident on May 24, 2014, including, but not limited to, the following information and documents: (1) the Facebook information requested in Callais' Interrogatory No. 25, (2) the Facebook account data requested in Callais' Request for Production of Documents No. 21, and (3) a signed copy of the Facebook Affidavit of Authorization requested in Callais' Request for Production of Documents No. 25.
>
> (*Id.* at p. 1).

The motion is opposed by Farley. (Rec. doc. 19). The Court held oral argument on the motion on August 4, 2015. (Rec. doc. 31). After thorough consideration of the pleadings, the exhibits attached thereto, the argument of counsel and the law, the Court rules as follows.

### I.    The Subject Discovery Requests

At first blush, it appears Callais seeks broad discovery from Farley of "all Facebook activity" from his accident date through the present. Actually, it seeks something more – by virtue of its request that this Court compel Farley to provide password and log-in

information and execute the authorization it included as part of its requests, it seeks unsupervised and ongoing entry into (and even "real-time" monitoring of) the "private"[1] portions of Farley's Facebook account(s) in order to conduct its own survey and analysis of what might be helpful to it in this litigation. The pertinent formal requests:

> **[Interrogatory 25]**:  [P]lease provide the following information for every social or professional networking or blogger site you used:
>
> a. Name and uniform resource locator (URL) address of the site;
>
> b. The specific URL of your account profile on the site;
>
> c. Your account name and real names or pseudonyms you have used to identify yourself on the site;
>
> d. Your user ID or logon and password used to access your account on the site;
>
> e. The dates you used the site;
>
> f. The email address(es) used by you in registering for the site;
>
> g. Your account User ID number or Friend ID number, if applicable;
>
> h. Any account identification other than that listed above.[2]
>
> **[Request for Production 21]**: For each Facebook account maintained by you, please produce your account data for the period of March 24, 2014 through present. You may download and print your Facebook data by logging onto your Facebook

---

[1] As the Court noted and counsel agreed at the hearing on this motion, any information on Plaintiff's "public" Facebook area is, by definition, already available to Callais and that information is not the subject of this motion.

[2] Additionally, in Request for Production No. 25, Callais requested that the Plaintiff "[p]lease complete and sign in the presence of a notary the attached Facebook Affidavit of Authorization."

2

>account, selecting "Settings" under the triangle-shaped tab on the top right corner of your homepage, clicking "Download a copy of your Facebook data" link, and following the directions on the "Download Your Information" page.

(Rec. doc. 9-1 at pp. 3-4).

The Court suspects that even a casual reader would view these requests as intrusive, particularly given the fact that the combination of requests for log-in and password information <u>and</u> an accompanying request for an authorization that Facebook turn over all the sought-after information would essentially render moot any exercise of discretion by Farley or his counsel in determining what, if any, information was actually discoverable.  If this were a "traditional" document request, that would certainly be the case.  But these are requests for "social media"-based information, so the suggestion has been made that a new, perhaps yet-to-be-determined, set of discovery principles and rules should apply here.  The Court disagrees.

No doubt the proliferation of activity on social networking sites ("SNS") is affecting what have been fairly well-established conventions when it comes to formal discovery in federal-court litigation.  Smart, opportunistic lawyers are now routinely seeking to exploit the "brave new world" feel of this ever-evolving aspect of how many average Americans go about their daily lives to gain an advantage in litigation.  This Court's recent experience and research confirms this observation, evident not only in the cascade of motions like the one now before this Court that seek surprisingly broad disclosure of "private" online discourse, but in the relative paucity of on-all-fours precedent that might otherwise guide us as to how a litigant's social-media activity and conduct fit into what lawyers and judges already understand about the breadth and limits of discovery under the Federal Rules of Civil Procedure.

3

In connection with the present motion, this Court has been cited by Callais to cases that it claims stand for the proposition that <u>anything</u> posted by a litigant on SNS is fair game in discovery. Those cases are discussed below but it bears mention here that Callais' discussion of them is preceded in its brief by a rather bold argument, the tagline of which is "[i]f the plaintiff has nothing to hide, then he should not object to producing his Facebook records." (Rec. doc. 9-1 at p. 1). This statement reveals a fundamental misunderstanding of the general scope of discovery and where SNS information fits within that scope.

The present motion is about discovery of social media communications, which some lawyers and litigants apparently perceive to be different in kind than "other" discovery we are more accustomed to seeing. The Federal Rules do not allow for that distinction. The question created by the present motion and counsel's argument in support of it is whether the manner in which something is communicated to a <u>select</u> group of people ("friends" in the SNS parlance) matters under Rule 26. When it comes to one of the key indices of discoverability – relevance – is there a meaningful difference between typing a message into a cellphone or a computer keyboard, as opposed to speaking it out loud to another person or writing it on paper? In this Court's view, the answer to that question must be "no."

## II.     Law and Analysis

In its memorandum in support, Callais relies most heavily on three cases, none of which provides any meaningful support for its position. For instance, Callais argues that the court's decision in *In re White Tail Oilfield Services, L.L.C.*, supports its broad request for "all" Facebook data and the execution of a blanket authorization by Plaintiff in this case. For the following reasons, this Court disagrees.

First and foremost, the requests in the *White Tail* case were un-objected to and the motion to compel responses thereto was unopposed. *In re White Tail Oilfield Services, LLC*, No. 11-CV-0009, 2012 WL 4857777 at *2–3 (E.D. La. Oct. 11, 2012) (Roby, MJ). Counsel for Callais knows this, because he was also counsel in the *White Tail* case.[3] This Court cannot and will not guess as to why the Plaintiff in that case consented to producing the material requested, but the fact that he did meant that the court in that case was not called upon to conduct any analysis of the merits *vel non* of the requests. A review of the court's decision in that case makes it clear that there is no discussion in the opinion that could lead one to conclude whether the broad discovery requests in that case would have been allowed over objection, had one been raised. The result in that case alone is therefore neither authoritative nor persuasive here, given Farley's strident objections to the subject SNS discovery in this case.

The same can be said of the result in *Held v. Ferrellgas*,[4] a district court case from Kansas to which Callais devotes two pages of argument in its brief. That case is plainly unhelpful here because, as to the issue of discoverability of SNS information, it is entirely devoid of any reasoning or analysis. This Court cannot be persuaded by the mere result in that case where there is no reasoning to support or explain that result.

As it turns out, a decision much more helpful to this Court also emanated from the Kansas district court – *Smith v. Hillshire Brands*.[5] In that case, the defendant in an employment case sought production of SNS information from the plaintiff through two specific requests. The first request sought "social networking documents that directly

---

[3] This also likely explains the fact that the specific requests at issue in this case are virtually verbatim duplicates of those at issue in the *White Tail* case. *Id.* at *2.
[4] No. 10-CV-2393, 2011 WL 3896513 (D. Kan. Aug. 31, 2011).
[5] No. 13-CV-2605, 2014 WL 2804188 (D. Kan. June 20, 2014). Callais did not cite this case.

5

reference or mention defendant or matters raised in plaintiff's complaint." *Id.* at *4. The Court, noting that Plaintiff had not objected to responding to that request, ordered production. *Id.*

The next request was problematic for the court, raising a "more complex issue, as it seeks documentation of *all* of plaintiff's activity on the named social networks since January 1, 2013, regardless of whether the activity has anything at all to do with this case or the allegations made in plaintiff's complaint." *Id.* (emphasis in the original). The *Smith* Court found this request facially flawed, as it sought clearly irrelevant information:

> Although it is apparent to the court that plaintiff's social networking activity that references in any way defendant or matters asserted in plaintiff's complaint is relevant, it is less apparent why unfettered access to plaintiff's social media activity over the past year-and-a-half is relevant. The burden therefore falls on defendant to establish relevancy.

*Id.*

The Court went on to find that the record in that case did not support the defendant's "extremely broad discovery request." *Id.* In doing so, it cited a number of similar cases from other districts, observing:

> such [all-inclusive SNS] access could reveal highly personal information—such as plaintiff's private sexual conduct—that is unlikely to lead to admissible evidence in this case. Information on social networking sites is not entitled to special protection, but a discovery request seeking it nevertheless must meet Fed.R.Civ.P. 26's requirement that it be tailored "so that it 'appears reasonably calculated to lead to the discovery of admissible evidence.'"[6]

---

[6] *Id.* (citing *Davenport v. State Farm Mut. Auto. Ins. Co.*, No. 11-CV-0632, 2012 WL 555759 at *1 (M.D. Fla. Feb. 21, 2012)(quoting Fed.R.Civ.P. 26(b)(1)); *see also Ogden v. All–Star Career Sch.,* No. 13-CV-0406, 2014 WL 1646934 at *1 (W.D. Pa. April 23, 2014)(holding that discovery request seeking complete access to the plaintiff's social networking activity was "far beyond the scope of discovery authorized by Rule 26"); *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012)(same).

Citing a decision from the Western District of Pennsylvania, the *Smith* Court aptly described the concern raised by such overbroad requests:

> Ordering plaintiff to permit access to or produce complete copies of his social networking accounts would permit defendant to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable. Defendant is no more entitled to such unfettered access to plaintiff's personal email and social networking communications than it is to rummage through the desk drawers and closets in plaintiff's home.[7]

This Court agrees wholeheartedly with these sentiments and notes that they have been shared by at least one other court in this district.

In *Johnson v. PPI Technology Services, L.P.*,[8] Magistrate Judge Knowles was faced with a motion to compel filed by a defendant who sought, among other things, "broad" discovery of Plaintiffs' SNS postings and photographs. *Id.* <u>Even</u> after finding that Plaintiffs had waived their objections by failing to timely raise them, Judge Knowles nonetheless denied the motion as to the SNS information, finding the scope of those requests too broad:

> Simply placing their mental and physical conditions at issue is not sufficient to allow [Defendant] to rummage through [Plaintiffs'] social media sites. Almost every plaintiff places his or her mental or physical condition at issue, and this Court is reticent to create a bright-line rule that such conditions allow defendants unfettered access to a plaintiff's social networking sites that he or she has limited from public view.[9]

This observation is notably applicable here because Callais, through counsel, has argued in the present motion that the broad Facebook discovery it seeks is proper and relevant because Plaintiff has placed both his physical and mental condition at issue in this case. (Rec. doc. 9-1 at pp. 7-9). While this Court concludes this "placing at issue" by

---

[7] *Id.* at *5 (*quoting Ogden*, 2014 WL 1646934 at *1).
[8] No. 11-CV-2773, 2013 WL 4508128 (E.D. La. Aug. 22, 2013)(Knowles, MJ).
[9] *Id.* at *2.

Plaintiff makes some of his SNS information discoverable, that rather predictable decision by Plaintiff cannot and does not justify the broad discovery sought by Callais in this motion.

Based on all the foregoing authority and the facts of this case, the Court finds the following categories of information discoverable from Farley's Facebook account, from March 24, 2014 (the date of accident) to the present:

> 1) postings by Farley that refer or relate to the accident in question;
>
> 2) postings that refer or relate to emotional distress that Farley alleges he suffered as a result of the accident and any treatment that he received therefor;
>
> 3) postings or photographs that refer or relate to alternative potential emotional stressors or that are inconsistent with the mental injuries he alleges here;
>
> 4) postings that refer or relate to physical injuries that Farley alleges he sustained as a result of the accident and any treatment that he received therefor;
>
> 5) postings that refer or relate to other, unrelated physical injuries suffered or sustained by Farley; and
>
> 6) postings or photograph that reflect physical capabilities that are inconsistent with the injuries that Farley allegedly suffered as a result of the accident.

In considering this matter, the Court declines to require Plaintiff to share his log-in or password information with Callais or to require him to sign any type of authorization to allow Callais to seek this information directly from Facebook. Rather, in fashioning both a remedy and a method of production, the Court is guided, not only by the authority cited and quoted above, but by the decision in the *Giachetto v. Patchogue-Medford Union Free School District* case,[10] in which the district court for the Eastern District of New York

---

[10] 293 F.R.D. 112 (E.D. N.Y. 2013).

crafted a method of production that was well-tailored to that case and, in this Court's view, is similarly appropriate in this case and others like it.  Adopting that approach here, the Court directs that Plaintiff's postings be made immediately available to Plaintiff's counsel and that they be reviewed by Plaintiff's counsel – *not Plaintiff himself* – to determine whether they fit into one or more of the categories set forth above.  That review and production is to take place within 30 days of this Order.[11]

In addition, and as part of the production ordered above, Farley is to execute and provide to Defendant a declaration, signed under penalty of perjury, affirming that he has provided to his counsel <u>all</u> SNS information (or access to it) requested by Callais.  Finally, Farley's counsel is to ensure preservation of all SNS information requested by Callais, regardless of the extent of any actual production from that information, in the event a dispute later arises over the appropriateness or scope of Farley's eventual production.  Failure by Farley and/or counsel to comply with any of these directives may result in appropriate sanctions being levied under Rule 37.

This is not a particularly complicated or unusual personal-injury case and the Court believes the limits it places upon SNS discovery here are well-suited in a case such as this to protect both the rights of the Plaintiff to be shielded from overly intrusive and overbroad discovery as well as the rights of Defendant to discover relevant information germane to Plaintiff's claims and its defenses against those claims.  Accordingly, the motion to compel is GRANTED IN PART and DENIED IN PART consistent with the foregoing.

---

[11] Counsel for Callais suggested at the hearing that this Court conduct an *in camera* review of all of Farley's Facebook data to determine what should be produced.  While *in camera* review is often appropriate to resolve claims of privilege, for reasons too numerous to list here, this Court declines to adopt a policy of reviewing documents *in camera* for <u>relevance</u>.

New Orleans, Louisiana, this __10th__ day of _____August_____, 2015.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE